[Cite as *State v. McCoy*, 2013-Ohio-4033.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99198**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LONNIE MCCOY

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED, VACATED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-562444

**BEFORE:** Jones, P.J., Rocco, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 16, 2013

**ATTORNEY FOR APPELLANT**

Michaele Tyner
Rockside Plaza, Suite 321
1440 Rockside Road
Parma, Ohio 44143


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Mary Weston
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} On reconsideration, the original announcement of *State v. McCoy*, 8th Dist. Cuyahoga No. 99198, 2013-Ohio-3806, released on September 5, 2013, is hereby vacated.

{¶2} Defendant-appellant Lonnie McCoy appeals his burglary conviction. We reverse and vacate his conviction, and remand.

## I.    Procedural History and Facts

{¶3} In 2012, McCoy was charged with one count of burglary with a repeat violent offender specification and a notice of prior conviction. The matter proceeded to a trial by jury; McCoy elected to have the repeat violent offender specification and notice of prior conviction tried to the bench.

{¶4} The following pertinent evidence was produced at trial.

{¶5} Helen Panek testified she was 88 years old, hard of hearing, and was mowing the lawn at her house in Maple Heights on May 5, 2012. Her house has both a front door and a side door and when she leaves the house or when she is cutting her grass she locks the door to her house "most of the time." Panek testified that she had a motion sensor in her basement that would activate when someone passed by and "after so many minutes, it goes off."

{¶6} According to Panek, she was pushing her mower into the front yard when a man on a bike and wearing "something gray" rode up her driveway but quickly turned and rode away. She did not recognize the man or remember him saying anything more than

"uh" to her. In court, she was not able to identify the man she had seen on the bike as McCoy.

{¶7} Anthony Gatto testified that his office was in a building located directly behind Panek's house. From his office, he has a good view of Panek's back yard. On May 5, 2012, he was finishing up paperwork when he saw a man on a bike behind Panek's house. Gatto left his office and drove down the street; as he was driving, he saw the man again. The man was then off his bike, walking towards the side door of Panek's house, and was wearing gloves.

{¶8} Gatto drove to the front of Panek's house and pulled into her driveway. He yelled to her that she was being robbed and to call police. But Panek testified that she did not remember Gatto saying anything to her when he pulled into her driveway.

{¶9} Gatto testified that he walked to the back of the house and saw a bike on the ground between the bushes. He looked into the open garage but did not see anyone. Gatto walked back towards the front of the house when, according to Gatto, the man walked out the side door of Panek's house. Gatto could not remember if the man was wearing gloves, but the man was not carrying anything.

{¶10} The man ran for his bike. Gatto pursued him and the men got in a "tug-of-war" over the bike that Gatto testified seemed like it lasted forever. The man insisted to Gatto he had not been in the house and had not robbed "the old lady."

{¶11} The man finally let go of the bike and fled. The Maple Heights police responded and Gatto gave officers a description of the suspect. The police caught the

man, identified as McCoy, whom Gatto identified during a "cold stand." Officers seized a pair of brown cotton gloves from McCoy's jacket pocket.

{¶12} Officer Steve Basiewicz of the Maple Heights Police Department testified that he responded to a dispatch call for a "robbery in progress." He received information that a suspect was running northbound from the house and was wearing a gray jacket. The officer observed McCoy and approached him. McCoy insisted that he "was not in her house."

{¶13} Officer Thomas Halley testified that he took Panek through her house and Panek did not find anything missing. Panek told police that her basement's motion light had been tripped even though she had not been in her basement for awhile. But during her testimony, Panek did not remember mentioning her motion sensor light to the police. The state also did not question Panek with regard to the length of time the motion sensor light remained on after it is activated.

{¶14} Corporal Donald Grossmeyer testified that he made the decision not to process the scene because the suspect was in Panek's house for a brief time and Gatto told him the suspect was wearing gloves. Gatto, however, was not sure if McCoy was wearing gloves when he allegedly exited the house.

{¶15} Panek testified that she never saw McCoy in her house, never found anything missing in her house, never noticed anything out of place in her house, and found no damage to her door.

{¶16} The jury found McCoy guilty of burglary and the trial court convicted

McCoy on the repeat violent offender specification and notice of prior conviction. The trial court sentenced McCoy to two years in prison.

{¶17} McCoy appeals, raising two assignments of error for our review:

[I].  Appellant's conviction was not supported by sufficient evidence.

[II].  Appellant's conviction was against the manifest weight of the evidence.

## II.  Law and Analysis

{¶18} In the first assignment of error, McCoy argues that his burglary conviction was not supported by sufficient evidence.

{¶19} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the state has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.*

{¶20} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶21} The jury convicted McCoy of burglary, in violation of R.C. 2911.12(A)(2), which provides, in pertinent part:

(A) No person, by force, stealth, or deception, shall do any of the following:

* * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

**{¶22}** McCoy argues that the state failed to show that he trespassed in Panek's house or that his purpose was to commit a criminal offense. Upon review, we find insufficient evidence to convince a factfinder that McCoy trespassed in Panek's house with purpose to commit a criminal offense.

**{¶23}** Panek testified that a man, whom she did not know and could not identify in court, rode up to her on his bike while she was mowing her front yard, but left without saying or doing anything. At some point, Gatto, who worked behind Panek's house, saw a man on his bike in Panek's back yard. He then saw the same man walking towards Panek's house, wearing gloves. Gatto drove to Panek's house, yelled for her to call police, and walked to the back of the house. He saw a bike in the bushes and then, according to Gatto, saw McCoy come out of Panek's side door. McCoy tried to take off on his bike, but he and Gatto struggled over the bike and Gatto eventually got the bike from him.

**{¶24}** McCoy fled and when the police caught him, he insisted he had not been

inside Panek's house.   Police testified that Panek reported that the basement's motion sensor light had been activated; but Panek did not remember telling police this. Moreover, there was no evidence that the motion sensor light stayed activated for a significant length of time, or for the length of time that would be necessary for McCoy to have entered the basement, tripped the sensor, exited the house, been confronted by Gatto, struggled over the bike with Gatto, fled the scene, been arrested and identified, and for Panek to notice the light was activated.

{¶25} Corporal Grossmeyer testified that although Gatto did not remember if the suspect was wearing gloves when he allegedly exited the house and that nothing was taken from the house or out of place, he made the decision to forego any forensic testing that might have shown whether McCoy was actually inside Panek's house.   Moreover, Panek testified that nothing was missing or disturbed inside her house.

{¶26} In light of the above, the state failed to showed by sufficient evidence the elements of burglary.   Therefore, the first assignment of error is sustained.

{¶27} Because we find that there was insufficient evidence to support McCoy's conviction, the second assignment of error, which challenged the manifest weight of the evidence, is moot.   *See* App.R. 12(A)(1)(C).

{¶28} Conviction vacated; judgment reversed.   Case remanded.   Defendant acquitted and ordered discharged.

It is ordered that appellant recover from appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS WITH
SEPARATE OPINION

KENNETH A. ROCCO, J., DISSENTING:

{¶29} I respectfully dissent from the majority opinion's disposition of this appeal. When I review the evidence presented in a light most favorable to the prosecution, I find that the state met its burden of proof in this case. Therefore, I would overrule McCoy's first assignment of error.

{¶30} The jury reasonably could believe from Panek's and Gatto's testimony that McCoy sneaked past Panek, donned gloves, and entered her house by means of the side door, which, because of the location of a large arborvitae, Panek could not view from the front yard. Panek stated the motion sensor lights in her basement had been activated, although she had not been in her basement in "a couple weeks."

{¶31} Gatto testified that he *saw McCoy emerge from Panek's house*. Indeed, McCoy's defense *excused* his entry into Panek's house by claiming McCoy used the bathroom because he had a "urinary tract infection." A rational juror could have found

from this evidence that McCoy trespassed into Panek's house with the purpose to commit a felony, but left without any of Panek's things when he looked out a window and saw that Gatto had arrived at the scene. *State v. Lambert*, 9th Dist. Summit No. 03CA0116-M, 2004-Ohio-3081. Thus, McCoy's protests to Gatto that he had not robbed "the old lady."

{¶32} Similarly, I would not disturb the jury's verdict because I believe McCoy's conviction was supported by the manifest weight of the evidence. I would, therefore, overrule his second assignment of error as well, and would affirm it.